## BARKER v. MOORE & McCORMACK CO., Inc.

### No. 300.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles T. Cowenhoven, Jr., and Roger B. Siddall, both of New York City, of counsel), for libelant-appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Without disparaging the attempt the libelant has made to make bad coal share with the rough weather the responsibility for the time taken to complete this voyage, for there is certainly ground for making the claim, it did come a little late. The record discloses no evidence in the ship's log that it occurred to the captain or his officers when the coal was being burned that it was poor. On the whole, it seems more probable that poor coal is now a poor excuse rather than a good reason for the time lost. We are speaking, of course, of the period before the Storviken put about and headed for Fayal. At that time, if at all, the off hire began. The delay was due, we think, to stress of weather slowing up the ship rather than to poor coal, and whether the claim for an off hire allowance is good or bad depends upon whether this was an average accident.

Apparently this term has not been used extensively in charters, and seems to have found its way into the books but rarely. It certainly has acquired no meaning in maritime law other than it has elsewhere except in so far as the word "average" may be said to color the expression and confine it to accidents which do not result in total loss. The term "free from average" in marine insurance is well known to mean that the policy covers total loss only. Coster v. Phœnix Insurance Co., 6 Fed. Cas. 611, No. 3,264; Bargett v. Orient Mutual Insurance Co., 16 N. Y. Super. Ct. (3 Bosw.) 385, 395. If this word is given the same significance here, it is akin to partial, Louisville Marine & Fire Insurance Co. v. Bland, 9 Dana (39 Ky.) 143, 147, and the expression will mean an accident not resulting in the entire loss of the ship and cargo. Perhaps it is unnecessary, however, to put anything upon the meaning of the word "average" in this particular case. Whatever else may be thought, it surely is true that an accident of some kind is necessary to call into play the off hire clause on account of "average accidents." It may be urged with some plausibility that bad weather in winter on the North Atlantic is an accident in the sense that whether or not it may be encountered on any voyage is somewhat a matter of chance. Yet, in a sea notorious for its severe weather at that time of year, the parties to this charter may well be said to have chosen words ill-suited to express their idea if by "average accidents" it was intended to cast upon the libelant whatever loss in time might be occasioned by rough, though not disabling, weather on the voyage. This would be directly in conflict with the general purpose of a charter on time rather than on a voyage basis. Accident is one of those hard-worked words too well known to make definition very needful, and having too many shades of meaning to make attempted definition, apart from its particular setting, a reliable guide. The plain purpose of this charter was to give the respondent the benefit of a fast voyage and let it assume the risk of a slow one, provided

always nothing happened to prevent the ship doing all it was designed to do in the face of whatever conditions were met. If the expression is construed ejusdem generis, it would have to mean something that prevented "the full working of the vessel." And we think it should be so construed. Not something preventing ground-gaining accomplishment, but some unexpected functional impairment making impossible the full use of the ship, with all the power and means of locomotion inherent in its size and construction with adequate crew and equipment, to overcome the forces of nature and make time against the wind and waves. When taken in this sense, it is obvious that there was no accident of any kind. The ship at all times did all that could have been expected of it under the adverse conditions. It broke ground at Copenhagen with an abundance of coal for reasonably to be expected consumption on the voyage to Boston. No one claims otherwise if the coal was good. While we think it was not shown to have been bad coal, the result would be the same if in fact it were bad; for the respondent is in no position to take advantage of the poor quality of coal which it supplied. Had the parties intended to have the libelant bear all loss of time caused by unpropitious weather, it would have been easy enough to have said so in plain language. Perhaps it would have been still easier to have done this by putting the charter on a voyage basis instead of on time.

Decree affirmed.